OPINION
Charles E. Rose was found guilty of domestic violence by a jury in the Kettering Municipal Court. He was sentenced to one hundred eighty days in jail and was fined $1,000, but the trial court suspended one hundred fifty days of the jail sentence and $800 of the fine and placed Rose on probation for one year.
According to the state's evidence, on February 15, 1998, Rose choked his estranged wife, Natalie, pushed her to the ground, grabbed her glasses off of her head, and broke them after she had rebuked his suggestion that they reconcile. He was charged with domestic violence, pled not guilty, and was brought to trial on July 29 and 30, 1998. At trial, Rose attempted to introduce evidence that he was not the father of the child born to the couple during their marriage for the purpose of impeaching Natalie's testimony and establishing a motive for her to fabricate the alleged domestic violence. Rose did not point to any specific testimony that he sought to impeach. The trial court excluded the result of the paternity test.
The matter was submitted to the jury on July 30. After deliberating for two hours or more, the jurors indicated that they had reached an impasse. The trial court instructed the jurors to take a break for lunch and then to continue their deliberations in hopes of reaching a verdict. Shortly after lunch, however, one of the jurors was taken to the hospital due to illness. As a result of the juror's illness, eleven days passed before the jury was able to resume its deliberations. When deliberations resumed, the jury returned a guilty verdict after approximately fifty minutes, and Rose was sentenced accordingly.
Rose raises three assignments of error on appeal.
 I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY EXCUSING THE JURY FOR A PERIOD OF ELEVEN CONSECUTIVE DAYS DURING ITS DELIBERATIONS, THEREBY VIOLATING THE DEFENDANT'S RIGHT TO DUE PROCESS UNDER THE OHIO AND U.S. CONSTITUTIONS.
Rose contends that he was prejudiced by the fact that the jury had been separated for eleven days, as demonstrated by how quickly the jury reached a verdict when it reconvened. R.C.2945.33 provides, in pertinent part, that "[u]pon the trial of any prosecution for misdemeanor, the court may permit the jury to separate during their [sic] deliberation." Rose was charged with domestic violence as a misdemeanor of the first degree. See R.C.2919.25(D). Thus, the trial court acted within its discretion when it allowed the jury to separate. Moreover, although the length of the separation in this case was unusual, there was no reason for the trial court to conclude, when the jury returned, that it was no longer able to consider the evidence that had been presented or that it had become prejudiced against Rose in the interim. Rose's bare assertion that the speed with which the jury reached a verdict was evidence of prejudice, without more, is simply not enough to warrant a mistrial or a reversal of his conviction.
Rose's first assignment of error is overruled.
 II. THE TRIAL COURT'S ADMONITIONS TO THE JURY WERE FATALLY DEFECTIVE UNDER THE MANDATORY PROVISIONS OF O.R.C. 2945.35 [SIC].
Rose contends that the trial court's admonition to the jurors regarding their conduct while separated did not comply with R.C.2945.35 and "created irreparable harm to the jury's deliberations." We presume that Rose intended to cite R.C.2945.34 because that is the statute quoted in his brief.
R.C. 2945.34 provides, in its entirety:
 If the jurors are permitted to separate during a trial, they shall be admonished by the court not to converse with, nor permit themselves to be addressed by any person, nor to listen to any conversation on the subject of the trial, nor form or express any opinion thereon, until the case is finally submitted to them.
In this case, when the trial court sent the jurors home due to a juror's illness, not knowing how long the separation would be, it instructed them as follows:
 [T]he only thing I can do at this time is instruct you not to make any decisions, one way or another, we're gonna suspend everything. Don't discuss it with anyone.
These instructions followed the trial court's more specific instructions the night before when the jurors were sent home for the night. At that point, the trial court said:
 Just a reminder, don't discuss the matter with anyone, allow anyone to discuss it with you, and do not form any conclusions, and I know it's real hard, but don't go home and discuss it with your family.
Rose contends that the trial court's instructions to the jury immediately prior to its eleven day separation were inadequate because the trial court failed to tell the jurors not to permit themselves to be addressed by anyone, not to listen to any conversations about the trial, and not to express any opinion about the case. Rose claims that the "unfortunate effect of the failure to admonish the jury was that each juror had eleven days to listen to outside opinions, allow others to talk to them about the case, and even express their own opinions to others."
Although it would have been preferable for the trial court to have admonished the jurors more specifically about their conduct while separated, we do not share Rose's view that the court's failure to do so requires reversal of his conviction. First, R.C.2945.34 does not prescribe reversal if the trial court fails to comply, and we are aware of no case law interpreting the statute to impose such a requirement. Second, Rose has presented no evidence that any of the jurors did, in fact, engage in any of the proscribed conduct. In our view, it is more likely than not that the jurors followed the court's general instruction not to discuss the case, especially in light of the court's more specific instruction the previous day that they must not discuss the matter with anyone or allow anyone to discuss it with them. We presume that the jurors abided by these instructions in the absence of evidence to the contrary. See State v. Harper (Aug. 12, 1994), Montgomery App. No. 13912, unreported. Third, Rose did not object to the trial court's admonition or request a more specific admonition. Thus, he waived all but plain error. Plain error will not be recognized unless, but for the error, the outcome of the trial clearly would have been otherwise. See State v.Underwood (1983), 3 Ohio St.3d 12, 14; State v. Long (1978),53 Ohio St.2d 91, paragraph two of the syllabus. Without any evidence that the jurors engaged in conduct violative of R.C.2945.34, we cannot conclude that the outcome of the trial clearly would have been otherwise if the trial court had given a more thorough instruction.
The second assignment of error is overruled.
 III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY REFUSING TO ALLOW DEFENSE COUNSEL TO CHALLENGE THE CREDIBILITY OF THE COMPLAINING WITNESS WITH THE RESULTS OF A PATERNITY TEST.
Rose claims that the trial court erred to his prejudice when it refused to allow him to introduce evidence that he was not the father of the child born to Natalie during their marriage. Rose claims that he properly sought to use this evidence to show Natalie's motive to lie about the alleged domestic violence and to impeach her credibility. The evidence that Rose sought to introduce to establish that he was not the father of the child born during his marriage to Natalie was the result of a paternity test. Defense counsel had allegedly first become aware of the result on the first day of trial, and the test, if believed, showed virtually no probability that Rose was the child's father.
In support of his argument, Rose relies on Evid.R. 616(A), which provides that a witness may be impeached by extrinsic evidence showing bias, prejudice, interest, or any motive to misrepresent. However, Evid.R. 616(A) is limited by Evid.R. 403(A), which states that relevant evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. The determination as to whether otherwise relevant evidence must be excluded because of a threat of unfair prejudice outweighing its probative value is within the sound discretion of the trial court and will not be overturned on appeal absent a showing of abuse of discretion. Cleveland v. Petko (1996),112 Ohio App.3d 670, 676. See, also, State v. Mason (1998),82 Ohio St.3d 144, 158.
The trial court found that the results of the paternity test were unduly prejudicial and that they were not directly relevant to the question of whether Rose had assaulted Natalie. Thus, the trial court permitted Rose to elicit testimony tending to show that Natalie might have had a motive to lie about her assault, but it did not allow the results of the paternity test to be admitted into evidence. In our judgment, the trial court reasonably concluded that the results of the paternity test were likely to be unduly prejudicial given their questionable relevance to the alleged motive of Natalie to lie and did not abuse its discretion in excluding that evidence. Moreover, we note that Natalie's testimony denying that she had had an affair during her marriage to Rose was stricken from the record, making it inappropriate for Rose to attempt to impeach this testimony with the results of the paternity test.
The third assignment of error is overruled.
The judgment of the trial court will be affirmed.
GRADY, P.J. and YOUNG, J., concur.
Copies mailed to:
Robert N. Farquhar
Lawrence W. Henke, III
Hon. Larry W. Moore